

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

PRESIDENT'S OFFICE, U of T

Acknowledged ............File ...........

Rec'd    MAY 30 1946

Refer to.................................

Please answer.........................

Please read and return ............

Honorable Weaver H. Baker, Chairman
State Board of Control
Capitol Station
Austin, Texas

Dear Sir:

Opinion No. 0-6697
Re: Right of inspection and duty
to testify concerning records
of eleemosynary institutions
of the State of Texas.

Your request for an opinion of this Department reads as follows:

"The Superintendents of our various eleemosynary institutions are continually requested by various persons, particularly attorneys, to give information with reference to the case file of a patient, or child ward, of the State. I attach hereto a photostatic copy of direct and cross interrogatories in a civil case now pending in the District Court of Hutchinson County, which is a typical example of inquiries made.

"As a matter of public policy, we have refrained from disclosing these files, except upon an order of the Court. Since these questions are continually arising, we would be pleased to have you answer the following inquiries:

"(1) Are the case histories in possession of the State Board of Control, or any eleemosynary institution of this State, relating to a patient, or child ward, public records, and as such, open to the inspection of the public?

"(2) Does a member of this Board, or an agent of this Board, such as the Superintendent of an eleemosynary institution, have the right, without the consent of the guardian of a mental patient, or of a child, to disclose the case history of such mental patient, or child?

"(3) In the event counsel representing all parties to a law suit agree to the issuance of direct and cross interrogatories to be propounded by a Notary Public, or other authorized officer, does that agreement legally authorize us to divulge the case history of a mental patient, or child ward -

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"(a) Without the consent of the guardian?

"(b) With the consent of the guardian?

"(4) In the event of the legal issuance of a Supoena Duces Tecum for the case history of a mental patient, or ward, does this Board, or the duly authorized agent of this Board, have the legal right to turn over to such court, the case history of a mental patient, or child ward?

"(5) Case histories are usually made up of the transcript of the trial, certified by the Clerk of the court in cases of jury trial, together with such other information which may be obtained by inquiry of social workers when the patient, or child, is originally admitted, and the subsequent events of their stay in eleemosynary institutions, usually medical diagnosis, care and treatment, weight charts, and other related matters. Aside from the transcript certified by the clerk of the court, all other information is of a strictly confidential nature, and is available only to the parents, or guardians, or associated professional advisors.

"(6) Does the above information, other than the transcript, constitute confidential information, and as such, is it privileged and would this Board, or its duly authorized agents, have the right to refuse to give such information, even though the same may have been duly ordered by a Court?

"The Constitution was amended to permit the admission of a mental patient for a period of ninety days without trial by jury. We have many such cases, such as habitual drunkards, dope addicts, and some other types that go into our hospitals for a period of ninety days, or less, for treatment, in which cases no court action is necessary, and their case records only disclose an application for voluntary admission on the part of the patient, or relative, or friend.

"Thereafter, the record of their stay consists in substance of the matter set out hereinabove for cases committed by jury trial.

"(7) Would the entire case histories of such voluntary patients be privileged, and would this Board, or its agents, have the right to refuse to disclose the contents or permit an inspection of the case histories, under all circumstances?"

You have attached the photostatic copy of interrogatories to be propounded to the Superintendent of the Austin State Hospital for the Insane in connection with a case pending in a District Court in Texas. They seek to elicit information concerning all records of the institution relating to the patient, including the physical and mental condition while there and the witness is directed to exhibit the records for photostating and attachment to the deposition.

A public record has been defined as, "a written memorial made by a public officer and a record of an officer as one made in the discharge of his official duties by doing an act which he is empowered by law to do." 36 Tex. Jur. 399; Nogueira vs. State, (Crim. App.) 59 S. W. (2d) 831; Heints vs. Thayer, (Sup.) 50 S. W. 929.

It has been said that, a public record is, ". . . one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are namely, that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it; but the authority of the officer need not be derived from express statutory enactment, and if authorized to make the record, it is not necessary that he should be required to do so." 53 C. J. 604.

Chapter 1, Title 51, V. A. C. S., contains the "general provisions" relating to all eleemosynary institutions of the State of Texas. General control and management is vested in the State Board of Control and each Superintendent is required among other things to, "keep a register of all patients and pupils received and discharged and a full record of all operations of the institution." Art. 3175-2. This provision does not relate only to the business and financial affairs of the institutions involved, for it is not so limited and furthermore the financial matters are otherwise covered in the Chapter in some detail. The respective Superintendents are also empowered "to establish such rules and regulations for the government of the institution in his charge, as he deems will best promote the interest and welfare of its inmates." Art. 3176-1. Another statute which requires public as well as private institutions to keep personal data on all patients for vital statistic purposes is Rule 50a, Article 4477, V. A. C. S.

We assume that the case histories referred to in paragraph (5) of your inquiry constitute the permanent records of the respective eleemosynary institutions concerning the operations thereof, and that they are kept under the direction of the Superintendent under pertinent rules and regulations established by him. Under such circumstances, we conclude that the records inquired about are "public records" and subject to the right of inspection by the public unless they are by law accorded a confidential or privileged status. Many jurisdictions have recognized a confidential relationship or privilege as between physician and patient and such privilege has been recognized in the case of treatment in public hospitals for the

insane. Massachusetts Mutual Life Insurance Company vs. Board of Trustees of Michigan Asylum for the Insane, (Mich.) 144 N. W. 538. Such is not the case, however, in Texas. We do not recognize as generally privileged the physician-patient relationship and the records of public hospitals which include results of examinations and treatment by physicians have been admitted to evidence as public records by our Courts. 44 Tex. Jur. 1074; Dodd vs. State, (Crim. App.) 201 S. W. 1014; Crew vs. State, (Crim. App.) 230 S. W. 148; 18 Tex. Jur. 404; McCoy vs. State; (Crim. App.) 294 S. W. 573; Garza vs. San Antonio Transit Company, (Civ. App.) 180 S. W. (2d) 1006; Dallas Coffee and Tea Company vs. Williams, (Civ. App.) 45 S. W. (2d) 724; 10 Tex. L. R. 510. This lack of privilege should be borne in mind, both with regard to the right of inspection of the records in question and as to the duty to testify concerning them.

As above noted, there is no general privilege as to the physician-patient relationship in Texas, but we do find in our statutes relating to public health, Article 4445, V. A. C. S., a special privilege relating to disclosures concerning the diagnosis and treatment of venereal diseases. Sec. 1 provides, in part, as follows:

"Any physician or other person who makes a diagnosis in, or treats, a case of syphilis, gonorrhea or chancroid and every Superintendent or manager of a hospital, dispensary, or charitable or penal institution, in which there is a case of venereal disease, shall report such case immediately in writing, to the local health officer, stating the name and address or the office number, age, sex, color, and occupation of the diseased person, and the date of the onset of the disease and the probable source of infection, provided that the name and address of the diseased person need not be stated, except as hereinafter specifically required in Section 5, and provided, further, that all information and reports concerning persons having venereal disease shall be held secret in accordance with provisions in Section 8. . . ."

Section 8 provides as follows:

"All information and reports concerning persons infected with venereal diseases shall be inaccessible to the public except in so far as publicity may attend the performance of the duties imposed by the laws of this State."

Similar provisions have been upheld in the decisions of other states. 45 Am. Jur. 433; 136 A. L. R. 859. A subpoena duces tecum directed to the Department of Health was held properly refused under a rule authorized by statute which provided "that the records of the department shall not be open for inspection by the public or to any person other than the representatives of the Department of Health of the city of New York and such persons as may be authorized by law to inspect such records." Such special statutory privileges have been enacted on a number of subjects in Texas and some of them have been written on and upheld by this Department

in the following opinions:  Opinion No. 0-4737, relating to the inspection
of franchise tax records of the Secretary of State; No. 0-2241, concerning
privilege of information secured by a bank examiner; No. 0-2122, as to the
confidential nature of the Old Age Assistance Warrant Register; and No.
0-2416 relating to the employment records of the Texas Unemployment Compen-
sation Commission.

In the light of the above discussion and in answer to your ques-
tion No. (1), it is our view that the case histories in possession of the
State Board of Control or any eleemosynary institution of the State, relat-
ing to a patient, or a child ward, are public records and as such are sub-
ject to a right of inspection by the public, except in so far as those
records may relate to or disclose information concerning venereal diseases
named in Article 4445, supra.

In the absence of a statute governing the matter of inspection
of public records, Texas has followed the common law rule and in the lead-
ing case of Palacios vs. Corbett (Civ. App.) 172 S. W. 777, error refused,
the Court quoted with approval from the Supreme Court of Tennessee as
follows:

> "'In theory the right of examination is absolute, but
> in practice it is at last only a matter of discretion, be-
> cause such application is likely at any time to be refused on
> the part of the custodian of the books and papers sought to
> be examined, and then the right must be forced by mandamus,
> and this writ is not of absolute right, but merely of discre-
> tion, to be awarded only in a proper case; the facts claimed
> as authorizing its issuance to be judged of in every case by
> the court, and the writ to be awarded or withheld upon a
> consideration of all the circumstances presented. So, while
> the right is, in theory, absolute, yet it is in practice so
> limited by the remedy necessary for its enforcement as that
> it can be denominated only a "qualified right." The right to
> an examination for a special purpose, as, for example, to
> obtain specific information to use in a litigation between
> the applicant and third parties, or between the applicant and
> the corporation, and the like cases, while not, in principle,
> standing upon higher grounds, yet it is the more easily
> grantable, because it does not involve so much time and so
> much inconvenience to the custodian of the books and papers,
> and so much interruption of business, as in case of a general
> examination. Yet it cannot be doubted, under a state of facts
> showing it to be important to the public interest that the
> general examination of the books of a municipality should be
> had, that the court should allow such examination at the suit
> of one who is a citizen and taxpayer of the corporation. The
> right rests, not only on the ground that the books are public
> books, but also on the same principle that authorizes the tax-
> payer to enjoin the enforcement of illegal contracts entered

into by the municipality, county, or state, for the protection of the applicant and all other taxpayers from illegal burdens. And it is obvious that, in making and enforcing such application, the taxpayer acts, in a very real sense, not only for himself, but for all other taxpayers, and acts, therefore, in the capacity, as it were, of a trustee for all. It must be admitted, also, that the exercise of such power, if prudently and carefully guarded, cannot be otherwise than salutary, because the knowledge that it can be exercised by a citizen and taxpayer, and may be exercised when the public good shall seem, on sound reasons, to demand it, cannot result otherwise than in producing an added sense of responsibility in those who administer the affairs of municipal corporations, and in including a greater carefulness in the discharge of the trusts imposed upon them by their fellow citizens under the sanctions of law.'"

Thus it is seen that the right of inspection is at best a "qualified right" depending to a large extent upon the exercise of discretionary power and it is undoubtedly the rule that the agency upon which the demand for inspection is made may require a showing of sufficient interest on the part of the demanding party before the inspection is allowed. 53 C. J. 628. Also the recording agency may make such reasonable rules and regulations governing the inspection of the records as will insure the safety of the records and the orderly conduct of the office where they repose. 53 C. J. 633.

In answer to your question No. (2), it is our opinion that the Board, or an agent of the Board, acting under policies of the Board, such as a Superintendent of an eleemosynary institution, has the right without consent of the guardian of a mental patient or of a child, to disclose the case history of such patient or child, if within the Board's discretion it deems the interest of the person making the request sufficient and if the records do not disclose any information concerning the venereal diseases above named.

Questions Nos. (3), (4), and (6) deal with the duty of the Board or its agents to testify, either on depositions or before a court as to the case histories inquired about as well as with the authority of a court to order the production of such records. There is a general duty to testify which rests upon all citizens. It is said in 44 Tex. Jur., at page 961 that, "a witness may be punished for contempt if he fails to appear in response to a valid subpoena or refuses to testify or to answer proper questions. One who is called as a witness may not put his own interests or sentiments above his duty as a citizen; he may not refuse to give testimony required in the administration of justice simply upon the ground of privacy or for other reasons not involved in the constitutional privilege of silence as to matter that might endanger his liberty . . . ." Rule 186, Texas Rules of Civil Procedure; Sec. 2192, page 64, Vol. VIII, Wigmore on Evidence (3rd Edition). The duty to testify and the authority to compel attendance and give evidence exists in the matter of taking depositions as well as in the instance where

the witness is summoned before a duly constituted court. Art. 3769b V.A.C.S., Rule 195, Texas Rules of Civil Procedure. Furthermore a court may compel the production of documents which are in the hands of third parties and which are material to the issues in the case by the issuance of a subpoena duces tecum but the use of this writ is limited to the county in which the court sits. 17 Tex. Jur. 681 and 44 Tex. Jur. 949. However, in the case of a deposition it is said that the officer taking the same has no inherent power to compel the production of documents. Sec. 1976, at page 3656 of Vol. 4, Jones Commentaries on Evidence (2d Edition); State vs. Klene, (Mo.) 207 S. W. 496. We know of no statutory provision in Texas giving an officer authorized to take depositions the power to compel the production of documents. Our Supreme Court has held expressly that such officer lacks this authority in Sayles vs. Bradley and Metcalf Co., 49 S. W. 209, where it is said, "Our revised statutes of 1895 (Arts. 2282-2284) provide for bringing the witness before the officer holding the commission to take his deposition and compelling him to 'answer' the 'interrogatories' and reducing the 'answer' to writing, and signing and swearing to same; but there is no attempt to confer upon such officer the delicate and dangerous power of compelling the witness to deliver or attach his private papers." Articles 3747 and 3769b, V. A. C. S., and Rules 195 and 196, Rules of Civil Procedure, which are the present provisions on the subject confer no additional powers of compulsion upon the officer taking the deposition over those exercised under the laws of 1895 cited by the above case. Although a witness may not be compelled to produce and attach documents at a deposition hearing, he undoubtedly may do so if he wishes. The practice is well established. Davis vs. M. K. & T. Ry. Co., (Civ. App.) 43 S. W. 44.

Answering now your question No. (3), if formalities in the issuance of a commission to take a deposition are waived and a Superintendent or agent of the Board is duly summoned to appear and depose before an authorized officer, he may be compelled to testify about the case history of a mental patient or a child ward, regardless of the consent or non-consent of the guardian, provided, however, the witness may claim a privilege and refuse to testify concerning the venereal diseases heretofore mentioned, and he cannot be compelled upon such a hearing to produce documents and records relating to the patient though he may do so.

Coming to question No. 4, it is our view that upon the legal issuance and service of a subpoena duces tecum, the Board or its agent would be bound to produce before the court the records or documents called for. However, it should be remembered, that a court's power to issue such process is limited to the county where it sits.

We believe we have already answered questions Nos. (5) and (6), and no reason for a different rule with respect to voluntary patients asked about in question No. (7) is perceived. In reaching the conclusions above stated, we are not unmindful of the line of decisions followed in some jurisdictions which might recognize a privilege in these matters on the ground of public policy. See 45 Am. Jur. 433; Runyan vs. Board of Prison and Terms and Paroles, 79 Pac. 2d 101.

Suffice it to say that under the present state of our decisions, we do not believe that our Texas Courts would follow such a rule. In the absence of some statutory privilege and so long as our courts require physicians to disclose medical information acquired in the treatment of private patients, we see no basis for creating such a privilege solely because the patient or inmate may be confined to a public institution.

The views expressed above should be qualified to the extent that where an inspection of records will involve the disclosure of juvenile court proceedings had under Article 2338-1, et seq., V. A. C. S., we think the inspection should be refused under Section 15 of Article 2338-1 which provides as follows:

"Juvenile Court records shall not be inspected by persons other than probation officers or other officers of the Juvenile Court unless otherwise directed by the Court."

While it is possible that we may have overlooked some statute creating a special or limited privilege not mentioned above, yet, the same principles stated would have application and it is our hope that our views will prove of assistance to you.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Eugene Alvis
Assistant

EA:zd:mb/jd

APPROVED OCT. 31, 1945

/s/ Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
Opinion
Committee
By B.W.B.
Chairman